```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
LEVAR HENRY,                            :
                         Plaintiff,     :
                                        :       10 Civ. 3822 (DLC)
            -v-                         :
                                        :       OPINION & ORDER
BRIAN FISCHER, in his capacity as       :
Commissioner of the New York State      :
Department of Correctional Services     :
(DOCS), and in his individual capacity; :
ANTHONY J. ANNUCCI, in his capacity as  :
Deputy Commissioner and Counsel for     :
DOCS, and in his individual capacity;   :
LUCIEN J. LECLAIRE, JR., former Acting  :
Commissioner of DOCS, in his individual :
capacity; GLENN S. GOORD, former        :
Commissioner of DOCS, in his individual :
capacity; JESUS DUMENG, OTIS CRUZ,      :
CARLOS SANCHEZ, in their official       :
capacity as Parole Officers, and in     :
their individual capacity; and JOHN/JANE:
DOES 1-50 (DOCS Supervisory, Training,  :
and Policy Personnel),                  :
                         Defendants.    :
                                        :
----------------------------------------X
```

Appearances:

For plaintiff:
Levar Henry, pro se
10-A-4556
Sing Sing Correctional Facility
345 Hunter Street
Ossining, NY 10562

For defendants:
Michael J. Keane
Office of The Attorney General(NYS)
120 Broadway
New York, NY 10271

DENISE COTE, District Judge:

Pro se plaintiff Levar Henry ("Henry") brings this action pursuant to 42 U.S.C. § 1983 against seven named officers in the New York State Department of Correctional Services ("DOCS") and Division of Parole, and fifty unnamed DOCS supervisory, training, and policy personnel.[1]  Henry alleges that he was unlawfully subjected to a term of Post Release Supervision ("PRS") in violation of his constitutional rights.  Defendants have filed a motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim.  In response, Henry has requested that this action be held "in abeyance" until the resolution of "a potential Habeas Corpus petition being brought against the Division of Parole."  For the following reasons, Henry's request to stay the litigation is denied and the motion to dismiss is granted.

## BACKGROUND

The following facts are taken from the plaintiff's complaint unless otherwise noted, and are taken to be true for purposes of this motion.  LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009).  The New York State Sentencing Reform Act of 1998, known as "Jenna's Law," requires that a term of PRS be a part of every determinate

---

[1] As of the date of this Opinion, defendant Parole Officer Jesus Dumeng has not been served.

sentence. See N.Y. Penal Law § 70.45(1). On April 28, 2000, however, a New York State Court sentenced Henry to a five years determinate sentence of imprisonment without a term of PRS. Nevertheless, Henry claims that on or about April 1, 2005, a Parole Officer told him that he would not be released at the end of his five years determinate sentence if he did not sign a PRS parole conditions form. Upon his release from prison on May 25, 2005, DOCS placed Henry under PRS for a term of five years.

Henry violated his PRS curfew in February 2006 and was reincarcerated from February 21, 2006 to February 22, 2007. Henry reports that the "DOCS Executive Department" denied his "appeal" from the reincarceration after a hearing at Rikers Island.

Upon his release on February 22, 2007, Henry was subject to "intensive status" PRS until December 8, 2008. His parole officer, defendant Otis Cruz, put Henry into the Bellevue Men's Shelter even though Henry had a place to stay in New York City. On November 15, 2007, Henry was rearrested. As of the date of this Opinion, he remains incarcerated. Although Henry does not specify the reasons for this arrest, he asserts that "it all snowballed from PRS."

On June 30, 2008, the New York State Legislature enacted Correction Law § 601-d, which provided a mechanism of judicial review for individuals in DOCS custody or on parole who may not

3

have been properly sentenced to a term of PRS.  The law terms such individuals "designated person[s]."  N.Y. Corr. Law § 601-d.  Under this provision, when DOCS or the Division of Parole determines that an individual in its custody or under its supervision falls within this category, the agencies are required to notify the relevant sentencing court so that the individual may be resentenced.  Id.  After receiving notice, the court must hold a resentencing hearing within thirty days and issue a decision within forty days, unless the designated person, with counsel, consents to an extension.  Id.

On August 18, 2008, the New York Division of Parole notified Henry's sentencing court that Henry was a "designated person" pursuant to Correction Law § 601-d.  On December 8, 2008, one-hundred twelve days after the Division of Parole sent its notification, Henry appeared in front of the state sentencing court and was resentenced to the original five years determinate sentence without a term of PRS.  Henry was then released from PRS.

On May 10, 2010, Henry commenced this lawsuit for damages and declaratory relief based on alleged violations of his 14th Amendment due process rights.  On February 8, 2011, Henry amended his complaint and on August 1, 2011, defendants moved for dismissal.  An Order of August 8, 2011 directed the plaintiff to serve his opposition by September 2, 2011.

Henry did not file an opposition.  Instead, Henry submitted a letter, dated August 30, 2011, requesting that the present action be held "in abeyance until the outcome of a potential habeas petition being brought against the Division of Parole." Henry does not represent that he has filed a petition for a writ of habeas corpus.  In an apparent reference to Henry's incarceration for one year, ending on February 22, 2007, the letter claims that this habeas petition would show that the Division of Parole had no jurisdiction or authority "to impose a 1 year sentence [for] a violation of parole."  Henry was released from the one year term of imprisonment in 2007 and from PRS in 2008, and does not explain precisely what relief he would seek through a petition filed in 2011.

## DISCUSSION

I. Motion to Stay the Litigation

"[D]istrict courts . . . may stay a case pursuant to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." WorldCrisa v. Armstrong, 129 F.3d 71, 76 (2d Cir. 1997) (citation omitted).  See also Sierra Rutile Ltd. v. Katz, 937 F.2d 743, 750 (2d Cir. 1991).  Henry argues that his habeas corpus petition will establish that the Division of Parole had no authority to sentence him to a term of

PRS or to reincarcerate him for one year after he violated his curfew. As explained below, however, the defendants in this case have sovereign and qualified immunity with respect to each of these actions. Accordingly, the resolution of any independent proceedings will have no bearing upon the outcome of this case and the request to stay the litigation is denied.

II.  Motion to Dismiss

Defendants have moved to dismiss Henry's complaint on grounds of sovereign immunity, qualified immunity, insufficiency of the pleadings, lack of proximate causation, and privilege. On a motion to dismiss the court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation omitted). The court is "not bound to accept as true legal conclusions couched as factual allegations." Id. at 1950–51.

Pleadings filed by pro se plaintiffs are to be construed liberally. Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). The rule favoring liberal construction of pro se

submissions is especially applicable to civil rights claims. Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004).

Henry brings § 1983 claims against defendants in both their official and their individual capacities. Broadly construed, the complaint alleges that the defendants violated Henry's constitutional rights in five different ways: (1) by administratively imposing a term of PRS on him on May 25, 2005, (2) by re-incarcerating him on February 21, 2006 after he violated his curfew, (3) by subjecting him to "intensive status" PRS and forcing him to live at Bellevue Men's Shelter following his release from incarceration on February 22, 2007, (4) by rearresting him on November 15, 2007 for unspecified reasons, and (5) by failing to release him from PRS in accordance with the timeline laid out in Correction Law § 601-d, which provided a mechanism for his proper resentencing.

Because the defendants are employees of the State of New York, Henry's claims against them in their official capacities must be dismissed on the ground of sovereign immunity. Congress did not abrogate the states' sovereign immunity when it enacted § 1983. Quern v. Jordan, 440 U.S. 332, 341 (1979). Therefore, "state officials cannot be sued in their official capacities for retrospective relief [i.e., money damages] under section 1983." Huminski v. Corsones, 396 F.3d 53, 70 (2d Cir. 2005).

As to Henry's claims against defendants in their individual capacities, defendants argue that they are entitled to qualified immunity.  A government official may be shielded from liability under the doctrine of qualified immunity "if his conduct did not violate clearly established rights or if it would have been objectively reasonable for the official to believe his conduct did not violate plaintiff's rights."  Reuland v. Hynes, 460 F.3d 409, 419 (2d Cir. 2006) (citation omitted).

In determining whether a defendant is entitled to qualified immunity, the relevant inquiry is whether the right that was allegedly violated was "clearly established when the conduct occurred."  Saucier v. Katz, 533 U.S. 194, 199 (2001).  "The essence of the principle is that officers sued in a civil action for damages under 42 U.S.C. § 1983 have the same right to fair notice as do defendants charged with a criminal offense."  Pena v. DePrisco, 432 F.3d 98, 115 (2d Cir. 2005) (citation omitted).  In assessing a qualified immunity claim, a court must consider:

> (1) whether the right in question was defined with reasonable specificity; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

Id. (citation omitted).  Because none of the defendants' actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known," Ortiz v. Jordan,

8

131 S.Ct. 884, 888 (2011) (citation omitted), the defendants are correct that they are entitled to qualified immunity.

    A.  Legal History

As discussed above, in August 1998 the New York State Legislature enacted "Jenna's Law," which mandated that determinate sentences for all violent offenders must include a separate period of post-release supervision as a part of the sentence.  N.Y. Penal Law § 70.45(1).  Despite this mandate, state sentencing courts often declined to include a term of PRS in sentences for violent offenders.  In such cases, DOCS administratively imposed a term of PRS.  New York State courts routinely upheld the resulting sentences.  See, e.g., Deal v. Goord, 8 A.D.3d 769, 769-70, 778 N.Y.S.2d 319, 320 (3d Dep't 2004); People v. Crump, 302 A.D.2d 901, 902, 753 N.Y.S.2d 793, 793 (4th Dep't 2003); but see People v. Catu, 4 N.Y.3d 242, 244-45 (2005) (must advise defendant at plea of PRS).

In reviewing a petition for a writ of habeas corpus in June 2006, the Second Circuit held in Earley v. Murray, 451 F.3d 71 (2d Cir. 2006), that a state court's determination that DOCS could administratively add a term of PRS to the petitioner's sentence was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the United States Supreme Court."  Id. at 76.  The court noted that the appropriate remedy for the absence of a statutorily

9

mandated term of PRS in the judgment was the resentencing procedure provided in New York law.  In reaching its holding, Earley applied a seventy-year-old Supreme Court decision, Hill v. United States ex rel. Wampler, 298 U.S. 460 (1936), which found that the addition of a provision to a habeas petitioner's sentence by a clerk of the court was a violation of the petitioner's constitutional rights.  "The only sentence known to the law is the sentence or judgment entered upon the records of the court," id. at 464, and therefore the addition to the sentence imposed by the clerk was a "nullity."  Id. at 465.

Two Departments of the New York Appellate Division continued to uphold the constitutionality of DOCS's practices even after Earley.  See Garner v. N.Y. State Dep't of Corr. Servs., 831 N.Y.S.2d 923 (3d Dep't 2007); People v. Thomas, 826 N.Y.S.2d 36 (1st Dep't 2006) (PRS properly included on court's commitment sheet even though it was not orally pronounced).  On April 29, 2008, however, the New York Court of Appeals ruled that administratively imposed PRS violated the State's sentencing procedure.  See Garner v. N.Y. State Dep't of Corr. Servs., 10 N.Y.3d 358, 362 (2008); People v. Sparber, 10 N.Y.3d 457, 470 (2008).

B. Henry's Claims Regarding Events Prior to Earley

Henry's rights with respect to administratively imposed PRS were not clearly established for purposes of qualified immunity at the time Henry was placed under PRS.

> In the presence of a statute that requires all sentences for certain crimes to be accompanied by mandatory PRS, and New York cases that routinely upheld the administrative imposition of that PRS, . . . it was not clearly established for qualified immunity purposes prior to Earley that the administrative imposition of PRS violates the Due Process Clause.

Scott v. Fischer, 616 F.3d 100, 107 (2d Cir. 2010).[2]  Earley was decided in June 2006, whereas PRS was imposed on Henry by DOCS on May 25, 2005.  Accordingly, Henry's claims against the defendants for the administrative imposition of PRS must be dismissed.

Construed liberally, the complaint also brings claims against defendants for commencing and pursuing violation of PRS proceedings against Henry, which led to his reincarceration on February 21, 2006.  These claims must also be dismissed because these events took place prior to Earley and simply represented the continued enforcement of Henry's PRS.

---

[2] In Scott v. Fisher, the Second Circuit determined that the right to be free from the administrative imposition of PRS was clearly established by the time the case was decided in August 2010.  Scott, 616 F.3d at 102.  It did not decide, however, whether this right had been clearly established immediately after Earley.  Id. at 108.

Henry argues that Wampler established a right to be free from the administrative imposition of PRS, and that Earley confirmed that this right had become "clearly established" by the time DOCS placed Henry under PRS on May 25, 2005.  The Second Circuit has rejected this argument.  See Scott, 616 F.3d at 106-07.  Earley involved a petition for habeas corpus, governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 110 Stat. 1214, not a lawsuit for damages under § 1983.  AEDPA provides federal courts with a standard of review for habeas petitions.  It stipulates that federal courts shall not grant habeas petitions unless a state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

The doctrine of qualified immunity, on the other hand, is designed "to protect government officials in the exercise of their duties."  Burns v. Reed, 500 U.S. 478, 486-87.  In using the words "clearly established law" in the AEDPA, Congress did not intend "to codify an aspect of the doctrine of executive qualified immunity."  Williams v. Taylor, 529 U.S. 362, 380 n.12 (2000).  "[C]onsiderations informing limitations on habeas review are sufficiently distinct from those prompting recognition of qualified immunity to preclude easy analogy."  Walczyk v. Rio, 496 F.3d 139, 154 n.16 (2d Cir. 2006).  "The

question [for qualified immunity purposes] is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999).

In addition, the facts in Wampler are distinguishable from the administrative imposition of PRS at issue here and in Earley.  In Wampler, a clerk made a decision that was normally within the discretion of the sentencing judge to add a provision to a sentence.  Wampler, 298 U.S. at 463.  By contrast, a New York statute required that Henry be sentenced to a term of PRS and, as discussed above, New York State courts routinely upheld the practice until 2008.  In administratively imposing PRS on Henry on May 25, 2005 and reincarcerating him on February 21, 2006, an objectively reasonable official might have believed he was acting to uphold clearly established law rather than to violate it.  See Scott, 616 F.3d at 107.

   C.  Henry's Claims Regarding Events After Earley

Henry claims that the defendants continued to violate his due process rights through events that took place after Earley was decided.  This Opinion does not reach the question of whether Earley established clearly that the administrative imposition of PRS is unconstitutional.  Regardless, Henry's pleadings -- construed liberally -- are insufficient with

13

respect to each of his post-Earley claims.  These claims are therefore dismissed.

Henry alleges that one or more defendants subjected him to "intensive status" PRS and that defendant Cruz forced him to live at Bellevue Men's Shelter following his release from incarceration on February 22, 2007.  Henry does not explain how any of these actions represent anything other than the natural consequences of his initial placement under PRS which, as discussed above, took place prior to Earley.

Henry claims that his November 15, 2007 arrest and subsequent reincarceration "snowballed" from the unlawful imposition of PRS.  He does plead any facts that might connect this arrest to any unconstitutional actions of the defendants.  See Fischer, 616 F.2d at 110 ("lack of personal involvement or knowledge bars any claim that the . . . defendants can be held liable for what occurred").  Moreover, Henry does not even assert that he was reincarcerated wrongfully.

Henry argues that there was an unlawful delay between the time the Division of Parole notified his state sentencing court that he was a "designated person" in accordance with Correction Law § 601-d and the time that he actually received a hearing and judgment on the matter on December 8, 2008.  Section 601-d mandates that the state sentencing court resentence designated persons within forty days after notification by the Division of

14

Parole.  It took the sentencing court one-hundred twelve days to resentence Henry after it had been notified of his status by the Division of Parole.  Even assuming that these violations give rise to a viable § 1983 claim, however, Henry does not allege any personal involvement of the defendants in the delay.  A plaintiff "must plead that each Government-official defendant, through the official's own actions, has violated the Constitution."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009).  Correction Law § 601-d requires DOCS or the Division of Parole to notify the relevant sentencing court when it determines that an individual in its custody or supervision is a "designated person."  N.Y. Corr. Law § 601-d.  By all accounts, the agencies involved did just that.

III. Declaratory Relief

In addition to his claim for damages, Henry requests "a judgment declaring that defendants have committed the violations of law alleged in this action."  The Declaratory Judgment Act ("DJA") provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The DJA "by its express terms vests a district court with discretion to

15

determine whether it will exert jurisdiction over a proposed declaratory action or not." Dow Jones & Co., Inc. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003).  "Courts have consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action they would otherwise be empowered to hear."  Id.  In deciding whether to hear a declaratory judgment action, a district court should consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."  Id.

In this action, a declaratory judgment would not clarify the legal issues nor offer relief from uncertainty because the defendants are entitled to qualified immunity on all those claims that are plausible on the face of the complaint.  Henry's request for declaratory relief is thereby denied.

## CONCLUSION

Plaintiff's September 30, 2011 motion to stay the litigation is denied.  Defendants' August 1, 2011 motion to dismiss is granted, and the complaint is dismissed.  The Clerk

16

of Court is directed to enter judgment for defendants and to close the case.

SO ORDERED:

Dated: New York, New York
October 31, 2011

                                        DENISE COTE
                             United States District Judge

Copies sent to:

Levar Henry
ID# 10-A-4556
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

Michael J. Keane
Office of the Attorney General
of the State of New York
120 Broadway
New York, NY 10271